[*Ex parte* Gist.]

# Ex parte Gist.

*Petition for Mandamus.*

1. *Mere expression of opinion in a decree adjudicates nothing.*—The declaration in a decree in chancery that "it appears to the court that the complainants are entitled to the relief prayed for," adjudicates nothing, but is the mere expression of an opinion, not having the force of a judicial sentence.
2. *Decree of reference not final.*—Where the bill seeks to have an accounting for alleged trespasses, a decree of reference to the register to report what, if any, damages complainant had suffered from such trespasses, does not adjudicate that trespasses had been committed.
3. *A final decree to support an appeal must settle all the equities.* So long as any matter of equity in a bill in chancery remains undetermined by decree, though there may be other equities fully adjudicated, the decree is not final, in the sense that an appeal will lie from it.
4. *Limitation of appeal.*—The statutory limitation of time within which an appeal is allowed is construed to begin, not at the time or times when some of the equities may have been settled, but at the time when a decree is rendered leaving no equity to be settled.
5. *Intermediate decrees assigned as error.*—On an appeal from a decree leaving no equity unsettled, former decrees in the cause fully and finally settling the equities to which they relate, may be assigned as error, and may be reviewed without regard to the dates of their rendition.
6. *Partial decree res adjudicata, when; power of court to set aside.* A decree in equity finally settling one or more of the equities

of the bill, and leaving others undetermined, though not appealable, is final, in that it is *res adjudicata* of the equities to which it relates, and is beyond the power of the chancellor to set aside at a subsequent term.

7. *Dismissal for want of prosecution, a final decree, when; appeal; mandamus.*—The bill sought, 1, the reformation of a conveyance of lands; 2, an injunction against future trespasses thereon; 3, an accounting for past trespasses in cutting and removing timber and stones; separate decrees were rendered granting the reformation and the injunction prayed for; another decree of reference directed the register to ascertain and report the value of timber and stone cut or removed, which was never executed; and finally a decree was rendered at a subsequent term dismissing the cause for want of prosecution: *Held*, that the decree of dismissal was the final decree from which an appeal might be taken, and that *mandamus* would not lie to require the chancellor to set aside or modify such decree.

The case is stated in the opinion.

JAMES E. WEBB, for petitioner.—The decree dismissing the cause for the want of prosecution could not affect in any way the decree perpetuating the injunction. 2 Dan. Ch. Pl. & Pr. 1683; *Ascough v. Townsend*, 2 Vesey, 197; *Oldfield v. Cobbett*, 20 Beaver, 563; *Justice v. McBroom*, 1 Lea (Tenn.) 556; Kerr on Injunctions, 637, 632-3; *Ex parte Cresswell*, 60 Ala. 378; *Cochran v. Miller*, 74 Ala. 63; *Ex parte Elyton Land Co.*, 104 Ala. 91; *Trump v. McDonald*, 112 Ala. 256, 259. The former decrees settled all the equities of the bill, and the decree of dismissal was void and should be set aside.—*Ex parte Elyton Land Co.*, 104 Ala. 91; *Gorry v. Jenkins*, 109 Ala. 471; *Hunt v. Stockton Lumber Co.*, 21 So. 457; *Baker v. Barclift*, 71 Ala. 414; *Buckanan v. Thomasson*, 70 Ala. 402. The court has power to set aside a decree of dismissal for want of prosecution upon timely application. *Trevillian v. Knight*, L. R. I. House of Lords Cases, 30; *Robson v. Cromwell*, I Vesey, Sr. 205; *Millspaugh v. McBride*, 7 Paige Ch. 509; *Day v. Allaire*, 31 N. J. Eq. 315; 1 Black on Judg. 301 and 306.

W. S. CARY, *contra.*—The chancellor has no power to set aside a default decree after the term.—Rules 31, 70 and 84, Chancery Practice; 109 Ala. 338; 91 Ala. 355. Dismissal for want of prosecution, unless otherwise or-

[*Ex parte* Gist.]

dered, equivalent to dismissal on merits.—Rule 70 Chan. Pr.; *Strong v. Moog,* 72 Ala. 460.   The decree was final and appealable.—*Thornton v. Highland Ave. & Belt R. R. Co.,* 94 Ala. 355; *Allen v. Allen,* 80 Ala. 155.   In such cases *mandamus* will not lie.—*Ex parte McKissick,* 107 Ala. 494.

HEAD, J.—In June, 1888, the present petitioner (then Minnie J. Hardy) and others filed their bill in the chancery court of Shelby county against J. B. Randall and C. W. Cary, alleging their ownership, as heirs of James D. Hardy, deceased, of the stone and timber in and upon certain described lands, by a certain documentary chain of title to their said ancestor, but alleging the existence of a mistake in the description of the lands in the deed to him, and prayed for a reformation of the deed correcting said mistake.

Upon allegations that defendants, Cary and Randall, were making claim to said wood and stone by some pretended right which did not in fact exist, and had been, and were still, engaged in taking and carrying the same away, injunction of further such trespasses was prayed for.   The holders of the legal title to the lands, stone and timber were made defendants.   There was also a prayer for an account of the value of stone and timber taken, and a decree for same against Cary and Randall.

The cause was submitted for final decree upon pleadings and proofs, and on January 14, 1890, the chancellor rendered the following decree: "This cause, coming on to be heard at the above stated term, was submitted for final decree, as noted by the register, September 18, 1889, and was by consent held for decree in vacation. Upon due consideration, it is adjudged, ordered and decreed that the deed made by J. R. Keenan, M. L. Keenan, R. M. Patton and Jane L. Patton to James D. Hardy on the 20th day of January, 1880, attached to complainants' bill by copy, and marked 'Exhibit B,' be, and the same is hereby reformed so as to read, 'section 24, township 22, of range 3 west,' instead of 'section 24, township 24, of range 3 west,' as it now does, after its description of the subdivisions of the said lands therein mentioned as lying in said 'section 24.'

Notwithstanding the serious conflict of evidence in this cause, it seems to me that the complainants are not

30

only entitled to trial at law, where they can test their title, but to an injunction against the defendants' use of said stone and timber until said trial can be had.

The terms of this court having but three days, such a jury trial could not well be had in this court, and the parties must go to the court of law for a jury.

It is therefore ordered and decreed that the parties to this suit be, and they are hereby, remanded to the Circuit Court for said county for the trial of their respective legal titles, and that said suit or suits be commenced within six months from the enrollment of this decree.

It is further ordered that this cause and the injunction in favor of complainants be continued until the trial in said court of law is concluded, or until further orders of this court. All other questions in the cause are reserved. In vacation. Center, Ala., December 23, 1889.

On June 25, 1891, the chancellor rendered the following other decree in the cause: "This cause, coming on to be heard at the above-stated term, was submitted on the pleadings and proof noted by the register, and by consent was held for decree in vacation. Upon due consideration, it appears to the court that complainants are entitled to the relief prayed for. It is therefore adjudged, ordered and decreed that defendants' motion to dismiss bill and to dissolve injunction be, and they are hereby, overruled, and that said defendants' demurrers are hereby overruled. It is further ordered and decreed that complainants' injunction heretofore granted be, and same is hereby, perpetuated. All other questions in the original cause are reserved."

On Sptember 23, 1891, the following order was made in the cause: "This cause, coming on to be further heard at the present term, was submitted for an order of reference to ascertain the amount of damages, if any, committed by Cary and Randall in cutting and removing timber and removing stone from the lands in controversy.

Upon consideration it is ordered and decreed that the register ascertain and report what is the damage done by the said defendants, in cutting, raising, and removing the same therefrom. The register will report his action to the next term of this court."

On September 17, 1895, the following order was made in the cause: "This cause, coming on to be heard at

[*Ex parte* Gist.]

this term of the court, is submitted on pleadings and proof, as noted by the register, for reference to the register, and on defendants' motion to dismiss the bill. On consideration, it is ordered and decreed by the court that defendants' motion to dismiss the bill be, and it hereby is, overruled. It is further ordered and decreed that the decree of reference in this cause rendered on the 23d day of September, 1891, be, and the same hereby is, revived; and the register will ascertain the damages as in said decree directed, and make his report to the next term of this court."

On September 22, 1896, the following order was made: "This cause coming on to be heard, the complainants having failed to prosecute their suit, on motion of respondent it is ordered by the court that this cause be, and the same hereby is, dismissed out of this court. It is further ordered by the court that the complainants pay the costs, for which let execution issue."

Afterwards, to-wit, August 28, 1897, the complainants filed their petition in the cause, setting up all the facts hereinabove stated; praying that said order of dismissal be set aside and the cause reinstated, and that said decree of reference to ascertain damages be revived, and for general relief. The chancellor refused the petition, and the complainants now ask for the writ of *mandamus* to compel the chancellor to set aside entirely, or otherwise annul, the said decree of dismissal for want of prosecution, so far as it affects the dissolution of the injunction perpetuated by the said decree of June 25, 1891.

After the rendition of that decree (June 25, 1891) the respondents appealed to this court; but by reason of the fact, as we held the record showed, that there were matters of equity in the bill not settled, we reached the conclusion that the decree was not appealable, and dismissed the appeal *ex mero motu.*—*Randall v. Hardy,* 19 South. 971.

The matters of which we should now inquire, as we conceive, are, what case, if any, was before the chancellor when he made the order of dismissal, and what was the effect of that order?

It is very clear, we think, that the matters of equity which the bill contained were as follows: First, the reformation of the deed, which was fully and completely settled, in terms, by a decree granting the reformation

prayed for; second, the fact of the commission of trespasses by the defendants, Cary and Randall, and an accounting by them for the value of the stone and timber taken; third, injunction of all future trespasses by said two defendants. This latter was also fully and completely settled, in terms, by the decree perpetuating the injunction. There was no equity in the bill to be passed upon by decree, touching the matter of a trial at law of legal titles to the stone and timber. The chancellor, of his own motion, and for the ease of his conscience, directed the parties to try the question of title in a court of law; but the same was not done, and the chancellor afterwards waived it, by rendering a decree perpetuating the injunction upon his finding of the superior and permanent right of the complainants to the possession and enjoyment of the stone and timber.

It remains, then, to be considered whether the matter of the commission of trespasses by the parties charged, and their liability to account for the same, was settled and adjudicated by the decree.

There was no decree adjudging, in terms, that Cary and Randall had committed the trespasses alleged in the bill; and as the case, on said appeal, came before us (as the opinion states), there had not been an order of reference. The decree appealed from was rendered June 25, 1891, and the order of reference was made September 23, 1891, and revived September 17, 1895,—all prior, of course, to the dismissal of the case for want of prosecution now complained of. We did not have for consideration these subsequent orders.

We quote from the bill the language of the charge made against Cary and Randall, as follows: "Complainants aver that notwithstanding the said John W. Hardy paid the purchase money in full for the stone, timber and wood upon said lands in township 22 and range 3 west, and had entered upon and was using the same in his lifetime, yet one Chas. W. Cary, who resides in said county of Shelby, and is over the age of twenty-one years, and one John B. Randall, who also resides in Shelby county, Ala., and is over the age of twenty-one years, disregarding the rights of complainant, and against her protests, and seeking to take advantage of the misdescription of the lands hereinabove shown, pretend to claim some right to the stone, wood and timber

on said lands, and have, though often forbidden by the complainant, cut and carried away large quantities of stone from said lands without permission of complainant or legal authority, to-wit, two hundred dollars' worth of wood and timber, more or less, and two hundred dollars' worth of stone, and are still engaged in cutting said timber and digging said stone, and carrying it away, to be used in the manufacture of lime for sale; that the said Cary and the said Randall have now engaged on said lands a large force of laborers, engaged in removing the wood and stone therefrom for the purpose of manufacturing lime for sale, and have recently laid down on said lands a tramway for the purpose of carrying off from said lands said timber, wood and stone in larger quantities and more rapidly than heretofore, and, unless they are restrained and prevented, will soon denude said lands of the most valuable timber, wood and stone, and inflict irreparable injury upon these complainants."

The prayer on this point was in the following language: "Complainants further pray that pending this cause, and until the final disposition of the same, the said Cary and the said Randall, their agents, employes, servants, and all who may be under their authority, or hold under them or each of them, be each and every one of them restrained by an injunction immediately issuing out of this court from further cutting or carrying away, or further quarrying, digging, removing, or carrying away, any stone or wood from said lands hereinabove described, and the title to which is here sought to be reformed, and perfected in the estate of said John W. Hardy; and if, upon such final hearing, this court shall find the right to said stone, wood and timber to be in the said estate, then to make said injunction against the said Cary and Randall, and all others claiming adversely to said estate, perpetual.

"Complainants pray that an account be taken of the wood, timber and stone taken and carried away by the said Cary and the said Randall from said lands, and that they, or either of them, found to have wrongfully carried away the same, be decreed to pay a fair value for the same."

A temporary injunction, co-extensive with the prayer, was granted and issued.

As we have seen, the first decree in the cause settled nothing but the equity of reformation. The next, after stating that the cause was submitted on pleadings and proofs for decree in vacation, proceeded to declare that, upon due consideration, "*it appears to the court*" (Italics ours) that complainants are entitled to the relief prayed for, and then proceeded to overrule the demurrers and motions to dismiss for want of equity, and to dissolve the injunction, and rendered an absolute decree perpetuating the injunction theretofore granted, reserving all other questions in the original cause.

The effect of the subsequent order of reference was to require the register to ascertain and report the damages done to said timber and stone on said lands, if any, by the said defendants, Cary and Randall, in cutting, raising and removing the same therefrom.

It is clear, under our rulings, that the declaration in the decree, that "it appears to the court that the complainants are entitled to the relief prayed for," adjudicated nothing. The expression was merely of an opinion, not having the effect of a judicial sentence.—*Ex parte Elyton Land Co.*, 104 Ala. 88, *Thompson v. Maddox*, 105 Ala. 326; *Randall v. Hardy*, 107 Ala. 476; *Vice v. Littlejohn*, 109 Ala. 294; *Trump v. McDonnell*, 112 Ala. 256. Then, did the absolute decree, perpetuating the injunction, in connection with the subsequent orders of reference, show by implication an adjudication that Cary and Randall had committeed trespasses as alleged, for which they were liable to account? We think not. The perpetuation of the injunction simply prevented future trespasses. It did not necessarily determine that trespasses had been committed as charged. The order of reference did not, for that order, taken as a whole, left it to the register to ascertain if any damage had been committed, and, if yea, to ascertain and report the same. Neither of the orders furnished any aid to the other, as going to show a determination by the court that the alleged trespasses had been committed.

The result is that, when the chancellor was called on to make the order of dismissal complained of, there was a case before him to act upon, consisting of this unsettled equity and the disposition of the costs. At the time of the dismissal the costs were adjudged against the complainants, leaving nothing in the case but the un-

determined equity referred to.

It is a settled rule in this state that so long as any matter of equity in a bill in chancery remains undetermined by decree, though there be other equities fully adjudicated, the decree is not final, in the sense that an appeal will lie from it; and the statutory limitation of time within which an appeal is allowed is construed to begin, not at the time or times when some of the equities may have been settled, but at the time when a decree is rendered leaving no equity to be settled. Hence, if appeal is taken within the statutory period after the rendition of a decree such as last described, former decrees in the cause fully and finally settling the equities to which they relate may be assigned as error, and reviewed by this court without regard to the date or dates of their rendition.

But from this it is not to be concluded that the former decrees are any the less effectual and binding as *res adjudicata,* or in respect of the power of the chancellor over them at a subsequent term. In these respects they are as final and conclusive as if they had constituted a final, appealable disposition of the cause, not subject to collateral attack, and beyond the power of the chancellor to set them aside.

The order of dismissal simply dismissed the case that was then before the court. It did not profess to set aside or in any wise annul any former decree final in itself. Its only effect was to put the case which sought to hold Cary and Randall guilty of certain alleged trespasses, and to account for the same, out of court. That the order of the dismissal was within the court's jurisdiction is, of course, not to be denied. In a proceeding like this, we will presume this jurisdiction was rightfully exercised, and make no investigation in that regard.

The order of the dismissal finally disposed of the case, and, if the complainants felt aggrieved, they should have appealed to this court.

Mandamus denied.